## IN THE UNITED STATES DISTRICT COURT
## FOR THE NOTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **Annaliese Dugan and Eline Bandy, individually and on behalf of all others similarly situated under 29 U.S.C. § 216(b)** | **No.** |
| *Plaintiffs,* | |
| **v.** | **COLLECTIVE ACTION COMPLAINT** |
| **Reservoir Restaurant Inc.** | |
| *Defendant.* | |

Plaintiffs bring this case individually and as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), which includes all individuals Reservoir Restaurants Inc. ("Reservoir" or "Defendant") employed as servers. The case implicates Defendant and the underpayment of wages owed to its employees, including Plaintiffs and other employees like Plaintiffs, and Defendant's failure to pay the minimum wage required by federal law, 29 U.S.C. § 201, *et seq*.

**<u>Table of Contents</u>**

I.      Summary of FLSA Minimum Wage and Tip Credit Violations ..............................................3

II.     Parties ........................................................................................................................................7

III.    Jurisdiction and Venue ............................................................................................................. 8

IV.     Defendant is Required to Comply with the FLSA ................................................................. 9

V.      Facts Supporting Minimum Wage and Tip Credit Violations .............................................. 9

VI.     Revised Field Operations Handbook and Dual Jobs Regulation .......................................18

VII.    Collective Action Allegations ................................................................................................21

VIII.   Cause of Action No. 1: Failure to Pay the Minimum Wage Under the FLSA ................... 22

IX.     Cause of Action No. 2: Unlawful Kickbacks Under the FLSA ...........................................23

X.      Damages Sought ......................................................................................................................23

XI.     Jury Demand ........................................................................................................................... 24

XII.    Prayer for Relief ..................................................................................................................... 24

## I.     SUMMARY OF FLSA MINIMUM WAGE AND TIP CREDIT VIOLATIONS

1.     Defendant pays all of its servers, including Plaintiffs, wages that are less than the minimum wage. Instead of paying the minimum wage, Defendant is attempting to take credit for the tips its employees earn to meet the minimum wage requirement. This method of paying tipped employees less than minimum wage and relying on tips to meet the minimum wage requirement is known as the "tip credit." *See* 29 U.S.C. § 203(m).

2.     Under the FLSA's tip credit provisions an employer of tipped employees may, under certain circumstances, pay those employees less than the required minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers. However, there are strict requirements that must met before the employer can utilize and continue to utilize the "tip credit." *See* 29 U.S.C. § 203(m).

3.     An employer may pay tipped employees as little as $2.13 per hour by taking a credit for a portion of their tips up to a maximum tip credit of $5.12 per hour. *See* 29 U.S.C. § 203(m).

4.     An employer who wants to obtain the benefit of the tip credit must advise an employee *in advance* of its use of the tip credit of all the notice provisions under the FLSA. *See Id.* (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection[]").

5.     "[A]n employer must inform tipped employees of its use of the tip credit including [1] the amount of the employee's cash wage, the amount of the tip credit claimed by the employer, [2] that the amount claimed may not exceed the value of the tips actually received, [3] that all tips received must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips, and [4] that the tip credit shall not apply to any employee

who has not been informed of all of these requirements." *Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, at *5-6 (5th Cir. Mar. 18, 2022) (citing 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b)).

6.     An employer must also provide written notice of the information required by 29 C.F.R. § 516.28(a)(3). Specifically, the employer must provide all affected employees with *written* notice as follows: "[t]he amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week." *See* 29 C.F.R. § 516.28(a)(3).

7.     To obtain a tip credit, the employer must also show that it permitted its tipped employees to retain all their tips other than tips contributed to a valid tip pool—that is, a tip pool that is fully distributed solely among customarily and regularly tipped employees. *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (finding "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal. . . ."); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014) ("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA.") (citing 29 U.S.C. § 203)); *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

8.     Moreover, an employer will not be permitted to take a tip credit where its tipped employees kick-back, either directly or indirectly, to the employer for anything other than "the reasonable cost . . . of furnishing [an] employee with board, lodging, or other facilities, if [they] are customarily furnished by [the] employer to his employees." *Ettorre*, 2022 U.S. App. LEXIS 7295,

at *9 (quoting 29 U.S.C. § 203(m)). In other words, an employer violates the tip credit if its tipped employees purchase uniform, tool, or any other item in connection with their employment "unless the 'facilities' it covers counts as a 'wage.'" *Ettorre*, 2022 U.S. App. LEXIS 7295, at *9.

9.      In addition, an employer may only take a tip credit during limited times and when an employee is engaged in their tipped occupation. In other words, an employer is prohibited from taking a tip credit and paying its tipped employees the subminimum hourly tip credit rate to perform non-tipped work that is unrelated to the tipped occupation. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work[]"); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017) (employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Int'l, Inc.*, No. H-05-3733, 2008 U.S. Dist. LEXIS 52568, at *52 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

10.     Moreover, an employer is prohibited from taking a tip credit and paying its tipped employees the subminimum hourly tip credit rate to perform non-tipped work that is related to the employee's tipped occupation if the employee spends more than 20 percent of the time performing such related work in any workweek. *See Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual

jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc.,* 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1011 (N.D. Ill. 2012) ("An employer may take a tip credit 'only for hours worked by [an] employee in an occupation in which [he] qualifies as a 'tipped employee.'"); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Rests., Inc.*, 94 F. Supp. 3d 572, 583-84 (S.D.N.Y. 2015) (denying the motion to dismiss and explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Rest. Partners, LLC*, No. 1:13-CV-509-MHC, 2015 U.S. Dist. LEXIS 181149, at *18 (N.D. Ga. Mar. 26, 2015) (". . . a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if [plaintiff] spends more than twenty percent of her time performing related but non-tipped duties.").

11.     Finally, if a tipped employee performs directly supporting work for a continuous period of time that exceeds 30 minutes, the employer cannot take a tip credit for any time that exceeds 30 minutes. *See* 29 C.F.R. 531.56(f)(4).

12.     Defendant cannot rely on tips to supplement the subminimum hourly wages it paid to Plaintiffs and Collective Members because Defendant violated the FLSA by paying Plaintiffs and Collective Members less than minimum wage and committing multiple tip credit violations:

    a.     ***Violation for Failure to Inform***: Defendant failed to correctly inform Plaintiffs of the desire to rely on the tip credit to meet its minimum wage obligations. Defendant failed to inform Plaintiffs of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to

any employee who does not receive notice. Defendant failed to inform Plaintiffs in writing when the amount of the tip credit changed from the prior week.

    **b.**    ***Violation for Illegal Kickbacks for Non-203(m) Items***: Plaintiffs were required to pay for certain clothing and tools to work for Defendant, which reduced their wages below the minimum hourly wage required for tipped employees.

    **c.**    ***Violation for Improper Handling of Tip Pool and Exerting Unlawful Control Over Plaintiffs' Tips Vis-à-vis the Tip pool***: Defendant did not distribute the tip pool pursuant to any agreement among its servers; and Defendant cannot otherwise show that the tip pool was fully distributed solely among customarily and regularly tipped employees.

    **d.**    **Violation for performing work unrelated to tipped occupation**: Plaintiffs were required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to cleaning the restaurant, patio, and bar area, cleaning the restrooms, cleaning menus, sweeping, refilling sauce containers, cleaning and restocking expo line, cleaning soda machine, mandatory deep cleans, arranging furniture during opening and closing—stacking chairs and moving furniture, and restocking bar fruit and plates.

    **e.**    ***Violation for Performing Non-tipped Side Work in Excess of 20% of the Time Spent Working in the Week and for Periods Exceeding 30 Minutes***: Plaintiffs were required to perform greater than 20% of their time (and for periods exceeding 30 continuous minutes) non-tip producing side work, including, but not limited to setting up tables and chairs, cleaning tables, running food, refilling condiments, amongst other duties.

13.    As a result of these violations, Defendant lost the ability to use the tip credit and therefore must compensate Plaintiffs and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, for all hours worked. In other words, Defendant must account for the difference between the wages it paid to Plaintiffs and all similarly situated workers and the minimum wage rate.

## II.    PARTIES

14.    Plaintiff, Dugan is an individual and resident of Texas. Plaintiff Dugan was employed by Defendant as a server from approximately August 2021 to March 2023; and therefore, Plaintiff was employed by Defendant within the three-year period preceding the filing of this

lawsuit. At all relevant times mentioned, Plaintiff Dugan was an "employee" of Defendant as defined by the FLSA.

15.    Plaintiff, Bandy is an individual and resident of Texas. Plaintiff Bandy was employed by Defendant as a server from approximately March 2021 to March 2022; and therefore, Plaintiff was employed by Defendant within the three-year period preceding the filing of this lawsuit. At all relevant times mentioned, Plaintiff Bandy was an "employee" of Defendant as defined by the FLSA.

16.    The Proposed Collective Members ("Collective Members") are all current and former employees worked for Defendant as servers at any time within the three (3) year period since this *Complaint* was filed and were paid a direct cash wage of less than minimum wage. Collective Members will "opt in" pursuant to Section 216(b) of the FLSA by filing a consent to become a party-plaintiff. *See* 29 U.S.C. § 216(b).

17.    At all times hereinafter mentioned, Plaintiffs and Collective Members[1] were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206, 207.

18.    Reservoir Restaurants Inc. ("Reservoir" or "Defendant") is an entity formed under the laws of Texas and can be served with process by serving its registered agent, Emil Bragdon, 714 E. Peninsula, Coppell, Texas 75019.

### III.    JURISDICTION AND VENUE

19.    This Court has personal jurisdiction over the Defendant because Defendant is a resident of the State of Texas. Defendant also has sufficient minimum contacts with the State of

---

[1]  The term "Collective Members" as used in this *Complaint* refers collectively to the Collective Members.

Texas to confer personal jurisdiction.

20.    Defendant conducts business in Texas and conducts business within this district and division.  Moreover, Defendant employs Texas residents, including Plaintiffs and Collective Members, to work at Defendant's restaurant located in Fort Worth, Texas.

21.    This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq.* Therefore, pursuant to 28 U.S.C. § 1331, this Court has subject-matter jurisdiction over this matter because the claims in this suit arise under the FLSA, as amended, 29 U.S.C. § 201, *et seq.*

22.    Venue is proper in this District because at least one Defendant resides in this District. Venue is also proper because a substantial part of the events and omissions giving rise to this claim occurred in this District.

### IV.    DEFENDANT IS REQUIRED TO COMPLY WITH THE FLSA

23.    At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. *See* 29 U.S.C. § 203(s)(1).

24.    At all material times, Defendant has enjoyed yearly gross revenue in excess of $500,000 (exclusive of excise tax).

25.    At all material times, Plaintiffs and Collective Members were employees engaged in commerce or the production of goods for commerce.

### V.    FACTS SUPPORTING MINIMUM WAGE AND TIP CREDIT VIOLATIONS

26.    Defendant owns and operates the dining establishment commonly known as Reservoir in Fort Worth, Texas where it employed and employs servers, including Plaintiffs and the Collective Members to serve customers at its restaurant.

27.    In exchange for their labor, Defendant pays its servers an hourly wage that is far less than the federally mandated minimum wage.

28.    At all relevant times, Defendant paid Plaintiffs less than minimum wage.

29.    Because Defendant pays its servers less than minimum wage, its servers must rely on tips left by customers to earn a living. *See Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 190 (5th Cir. 2015) (a tip is "'a sum presented by a customer as a gift or gratuity <u>in recognition of some service performed</u> for him. . . . []'") (quoting 29 C.F.R. § 531.52) (emphasis added). The FLSA permits employers in some circumstances, where all conditions are satisfied, to take a credit for a portion of those tips to make up the difference between the subminimum hourly wage and the full minimum wage. This method of payment is known as a "tip credit" under the FLSA.

30.    Here, Defendant purportedly seeks to take advantage of the tip credit by paying its servers less than the minimum wage and relying on tips to offset Defendant's obligation to pay the full minimum wage.

31.    The tip credit has a harmful effect on workers that threatens the health of the economy. Accordingly, Adasina Social Capital, a company representing investors with more than $538 billion in assets, issued a letter to large corporations operating restaurants advising of the ills of using the tip credit.[2] The letter states as follows:

> Tipped workers are the largest group of employees that are paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work.** As a result, in the 42 states that allow the payment of a subminimum wage, tipped workers are twice as likely to live in poverty,

---

[2]    *See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited January 28, 2023.

and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.[3]

Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the tip credit to meet its minimum wage obligations.

32.    In this case, Defendant did not satisfy the strict requirements to use the tip credit. For instance, Defendant maintained a policy and practice whereby it failed to provide Plaintiffs and the Collective Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

33.    Defendant also failed to provide Plaintiffs and its other servers with ***written*** notice of the information required by 29 C.F.R. § 516.28(a)(3). Specifically, "[t]he amount per hour which [Defendant took] as a tip credit" was ***not*** "reported to [Plaintiffs and Collective Members] ***in writing*** each time it [was] changed from the amount per hour taken in the preceding week." *See* 29 C.F.R. § 516.28(a)(3) (emphasis added).

34.    Because Defendant failed to give Plaintiffs and its other servers notice of all the provisions required by the FLSA (including written notice of the contents required by 29 C.F.R. § 516.28(a)(3)), Defendant cannot rely on tips and assert the tip credit as an *affirmative defense* to its failure to pay Plaintiffs and Collective Members the minimum wage required by § 206 of the FLSA.

35.    Defendant also did not allow Plaintiffs and the Collective Members to retain all tips

---

[3]    *Id.* (emphasis in original).

as required by § 203(m). For instance, Defendant subjected Plaintiffs and the Collective Members to an illegal policy requiring Plaintiffs and the Collective Members to pay for their uniforms, tools, and other non-203(m) items.

36.    Plaintiffs and the Collective Members paid for their own uniforms, shirts, jackets, lost or missing silverware, cash shortages or walked tabs, and other incurred other expenses in connection with performing their job for Defendant.

37.    Defendant required Plaintiffs and the Collective Members to paid for their uniforms, tools, and other non-203(m) items, therefore Defendant violated the tip credit because the costs of these non-203(m) items is a retention of tips and violates condition two of 29 U.S.C. § 203(m). *See e.g., Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972) (holding that a general deduction for cash register shortages tends to "shift part of the employer's business expense to the employees" and is impermissible if the deduction drops cuts into the statutory minimum wage); *Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. 1995) ("[t]he FLSA does not permit an employer to transfer to its employees the responsibility for the expense of carrying on an enterprise."); 29 C.F.R. 531.3(d)(1), (2); 29 C.F.R. 531.32(c); *see also Herman v. Collis Foods, Inc.*, 176 F.3d 912, 918 (1999) (recognizing "the FLSA's policy of preventing employers from exploiting § 203(m) deductions for profit[]").

38.    Plaintiffs and the Collective Members were required to contribute a portion of their tips to a tip pool each shift. However, the FLSA requires that an employer ensure that "all tips received by [each] employee [be] retained by the employee. . . ." 29 U.S.C. § 203(m). The sole exception to the requirement that employees retain all earned tips, when an employer takes the tip credit, is where the employer operates a lawful tip pool. *See id.* (requiring that "all tips received by

such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips"); 29 C.F.R. § 531.54 ("[V]alid mandatory tip pools . . . can only include those employees who customarily and regularly receive tips.").

39.     Defendant violated the tip credit by unlawfully "exercising control over a portion of the[ir servers'] tips." *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 714 (N.D. Ind. 1998); *see also Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 894 (D. Md. 2011) (finding an FLSA violation where employer exercised control over employee's tips in violation of the tip credit provisions).

40.     For instance, Defendant unilaterally determined how to allocate tips from the tip pool—there was no agreement among the servers regarding the allocation of their tips from the tip pool. *See Reich*, 890 F. Supp. 586, 596 (holding "tipped employees must agree on the distribution of the tipped pool for the pool to be deemed valid[]") (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979)); *see also* 29 C.F.R. § 531.54 (defining a permissible "pooling arrangement" as one where "the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves").

41.     Because Defendant unilaterally decided, without input or agreement from Plaintiffs and the Collective Members, how to distribute the servers' tips from the tip pool, Defendant did not comply with the FLSA and therefore cannot claim a tip credit.

42.     Defendant also illegally exercised control over Plaintiffs' and Collective Members' tips when Defendant chose to utilize the tip pool to reduce payroll and pad their bottom line. Indeed, Defendant cannot show that the tip pool was fully distributed solely among customarily and regularly tipped employees. *See Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir.

2011) (employer has "the burden to prove it operated a legal tip pool"); *see also Steele*, 826 F.3d at 242 ("The employer carries the burden to prove its entitlement to the tip credit."); *Montano*, 800 F.3d 186, 189 (the employer "has the burden of establishing its entitlement to the tip credit[]").

43.     Because Defendant cannot show that it fully and lawfully distributed the tip pool solely among customarily and regularly tipped employees, Defendant cannot utilize the tip credit to pay Plaintiffs and the Server Collective Members. *See e.g., Barcellona*, 597 F.2d 464, 467 (holding that TGI Friday's had the burden to prove a valid tip pool arrangement after its servers brought suit questioning the validity of the tip pool); *Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n.3 (S.D. Fla. 2009) (citing 29 U.S.C. § 203(m)) ("If tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'").

44.     Defendant also maintained a policy and practice requiring all servers to perform non-tip producing side work unrelated to their tipped occupation. Defendant paid Plaintiffs and Collective Members a subminimum "tip credit" rate while they were engaged in nontipped work (i.e., work unrelated to their jobs as servers). To be sure, while performing these non-tip generating duties, Plaintiffs and Collective Members were performing work that did not include interacting with or serving customers—the type of work that does not generally evoke tipping generosity.

45.     These non-tipped duties include, but are not limited, to cleaning the restaurant, patio, and bar area, cleaning the restrooms, cleaning menus, sweeping, refilling sauce containers, cleaning and restocking expo line, cleaning soda machine, mandatory bar and restaurant cleaning, arranging furniture during opening and closing—stacking chairs and moving furniture, and restocking items (including restocking bar fruit and plates), and many other activities that were not

related to their tipped occupation as servers.

46.    Defendant maintained a policy and practice that required Plaintiffs and Collective Members to spend a substantial amount of time, in excess of 20%, performing non-tip producing side work related to their tipped occupation. Specifically, Defendant maintained a policy and practice requiring Plaintiffs and Collective Members to spend a substantial amount of time performing non-tip producing side work, including, but not limited to, stacking chairs and setting up tables, running food, and other "side-work" such as rolling silverware, restocking lemons, limes, straws, napkins at service well, restocking small plates, filling containers with sauce (i.e., ranch, chili ranch, salsa) and other condiments, restocking expo line, cleaning bathrooms (i.e., restocking toilet paper, soap, sweeping, removing cups, emptying tampon trash).

47.    Defendant also required Plaintiffs and Collective Members to perform non-tip producing work prior to the opening of the restaurant and after the restaurant closed.

48.    Indeed, Defendant required the Plaintiffs and Collective Members to arrive prior to the restaurant's opening for business, when there were no customers and no opportunities to earn tips, to perform manual labor cleaning and setup duties, including, but not limited to, moving tables and chairs, bringing out and setting up expo line with sauces, putting soda machine together, cutting limes and lemons, rolling silverware, setting up patio chairs, checking bathrooms (before opening), and setting up service well.

49.    Likewise, Defendant required Plaintiffs and Collective Members to remain at the restaurants after they had closed for business and when there was no opportunity to earn tips, to perform manual labor and cleaning duties, including, but not limited to, putting away condiments and extra sauces, preparing and filling sauces in containers, cleaning bathrooms, rolling silverware,

sweeping, putting away lines and lemons, and cleaning expo line.

50.    Plaintiffs and Collective Members spent far more than 30 minutes performing continuous non-tip producing work—including before the restaurant was open and after the restaurant was closed.

51.    Yet, Defendant continued paying Plaintiffs and Collective Members at the tip credit rate—less than minimum wage—while requiring them to perform these nontipped tasks prior to the restaurant's opening for business and after the restaurant was closed.

52.    However, Defendant did not pay Plaintiffs and the other Collective Members for the time they spent cleaning the restaurant during "mandatory deep cleans."

53.    Indeed, Defendant required Plaintiffs and Collective Members to arrive before the restaurant opened to perform and complete all deep cleaning duties for the entire restaurant during the "mandatory deep cleans."

54.    Defendant illegally failed to pay its tipped employees any compensation during the "mandatory deep cleans" and while requiring its tipped employees, including Plaintiffs and the Collective Members to clean the entire restaurant, including but not limited to, dusting shelves, ceiling lights, booths, windows, and the bar;  deep cleaning kitchen (i.e., scrubbing and cleaning the soda machine, under tea machine, kitchen walls, doors to kitchen, floors, sauce containers); cleaning all menus in the building; and cleaning windows.

55.    Moreover, if Plaintiffs and Collective Members did not show up to the "mandatory deep cleans," Defendant added a deep cleaning assignment to the end of the that tipped employees—Plaintiffs and the Collective Members—work shift and closing duties.

56.    Many of the nontipped tasks that Defendant required Plaintiffs and the Collective

Members to perform are duties that should have been assigned to employees who Defendant is legally required to pay at or more than minimum wage.

57.     Instead of assigning these tasks to an employee who Defendant is obligated to pay at least minimum wage, Defendant attempted to take advantage of the tip credit and assign these tasks to Plaintiffs and Collective Members while continuing to pay them less than minimum wage.

58.     When Plaintiffs and Collective Members performed these non-tipped duties, they did not interact with customers and did not have an opportunity to earn tips.

59.     Indeed, Defendant did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

60.     Defendant did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendant was capable of doing so.

61.     Defendant uses a point-of-sale system to record hours worked by their tipped employees. Defendant then analyzes the information collected by this system, including the labor costs at its restaurant.

62.     Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track the specific tasks for Plaintiffs and Collective Members.

63.     In the point-of-sale system, Defendant can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work. However, Defendant did not allow its tipped employees to clock-in at the full minimum wage rate when performing the non-tipped work described in this *Complaint*.

64.     Moreover, Defendant violated the FLSA by not paying the minimum "tipped"

hourly rate. Defendant required its tipped employees to pay for their uniform, including shirts and jackets, and other non-203(m) items. These expenses were primarily incurred for the benefit and convenience of Defendant.

65.    Defendant lost the right to take credit for tips and offset their obligation to pay Plaintiffs and Collective Members the full minimum wage because Defendant violated the requirements to claim the tip credit. As a result, Plaintiffs and Collective Members were not compensated at the federally mandated minimum wage.

66.    Defendant knew or should have known that their policies and practices violate the law, and Defendant has not made a good faith effort to comply with the FLSA. Rather, Defendant acted knowingly, willfully, and/or with reckless disregard of the law, carried and continue to carry out the illegal pattern and practice regarding their tipped employees as described in this *Complaint*. Defendant's method of paying Plaintiff and Collective Members was not based on a good faith and reasonable belief that their conduct complied with the law.

## VI.    REVISED FIELD OPERATIONS HANDBOOK AND DUAL JOBS REGULATION

67.    On November 8, 2018, the DOL issued an opinion letter FLSA2018-27 which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that existed at the time. However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference. *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019); *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019); *Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019).

68.    On October 8, 2019, the DOL announced its intention to revise the dual jobs regulation in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making. *See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa.

69.    On December 30, 2020, after soliciting comments, the DOL published a final rule with an effective date of March 1, 2021. *See* https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa.

70.    On June 21, 2021, after delaying the effective date of the Final Rule,[4] the DOL announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip credit." *See* https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

71.    On October 28, 2021, after soliciting more comments, the DOL announced publication of the "Tips Dual Jobs final rule". *See* https://www.dol.gov/agencies/whd/flsa/tips. Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes. That is, when a tipped worker performs non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit.

72.    Here, Defendant illegally required Plaintiffs and the Collective Members to perform non-tip producing work for an excessive period of time. Defendant required Plaintiffs and

---

[4] *See* https://www.dol.gov/agencies/whd/flsa/tips.

the Collective Members to perform non-tipped for periods longer than 30 minutes during times when there was no opportunity to earn tips including before the restaurants were open for business, during their shifts, after the restaurants were closed, and other times when the restaurants did not have customers and there was no opportunity to earn tips. During these times, Defendant continued to pay Plaintiffs and Collective Members less than minimum wage while they were forced to perform their assigned non-tip producing duties, as noted above.

73.     However, Defendant illegally did not pay its tipped employees, including Plaintiffs and the other Collective Members, for any time they spent cleaning the restaurant during "mandatory deep cleans."

74.     Yet, Defendant required Plaintiffs and Collective Members to arrive before the restaurant opened to perform and complete all deep cleaning duties during the "mandatory deep cleans," including but not limited to, dusting shelves, ceiling lights, booths, windows, and the bar; deep cleaning kitchen (i.e., scrubbing and cleaning the soda machine, under tea machine, kitchen walls, doors to kitchen, floors, sauce containers); cleaning all menus in the building; and cleaning windows. Indeed, Defendant conducted the "mandatory deep cleans."

75.     Moreover, if Plaintiffs and Collective Members did not show up to the "mandatory deep cleans," Defendant added a deep cleaning assignment to the end of the that tipped employees—Plaintiffs and the Collective Members—work shift and closing duties.

76.     Given that Defendant failed to comply with the requirements to take the tip credit, Defendant has lost the ability to claim the tip credit and owe Plaintiffs and the Collective Members pay at the full minimum wage rate per hour for all hours they worked for Defendant.

## VII.    COLLECTIVE ACTION ALLEGATIONS

77.    The foregoing paragraphs are fully incorporated herein.

78.    Plaintiffs brings these FLSA claims as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendant as a server for at least one week during the three-year period prior to the commencement of this action to the present.

79.    Plaintiffs have actual knowledge, through conversations with co-workers, that a collective of similarly situated workers exists who have been subjected to the same policies of Defendant with respect to the payment of the minimum wage.

80.    Defendant employed other servers who are similarly situated to Plaintiffs in that they share the same duties and were subject to the same violations of the FLSA.

81.    Plaintiffs and Collective Members have the same pay structure, have the same job duties, were required to participate in the tip pool from which a portion of the tips were distributed to ineligible participants, were required to pay for non-203(m) items, and were required to perform non-tipped duties while being paid at the subminimum "tipped wage." Plaintiffs and Collective Members are all victims of Defendants' unlawful compensation scheme.

82.    Like Plaintiffs, the Collective Members were not given proper notice of the tip credit provisions, performed substantial work that was unrelated to their tip producing duties for a significant period of time, and were all subject to the same unlawful tip pool.

83.    Although the exact amount of damages may vary among the Collective Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

84.    As such, the proposed collective of similarly situated employees ("Collective

Members") sought to be certified pursuant to 29 U.S.C. § 216(b), is defined as:

> **All individuals who worked as servers for Defendant at any time during the three (3) year period preceding the filing of this lawsuit and were paid a direct cash wage of less than minimum wage.**

85.    The names and addresses of the Collective Members are available from Defendant's records. To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by methods used and a form of notice similar to those customarily used in representative actions in this Circuit.

## VIII.    CAUSE OF ACTION NO. 1: FAILURE TO PAY THE MINIMUM WAGE UNDER THE FLSA

86.    The foregoing paragraphs are fully incorporated herein.

87.    This count arises from Defendant's violation of the FLSA in connection with their failure to pay the minimum wage. *See* 29 U.S.C. § 206.

88.    At all times relevant, Plaintiffs and the Collective Members were paid hourly rates less than the minimum wage while working for Defendant.

89.    None of the exemptions or defenses provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendants, Plaintiffs, or Collective Members.

90.    Defendant's failure to comply with the minimum wage requirements of the FLSA, particularly the tip credit requirements, resulted in Plaintiffs and the Collective Members being paid less than the required minimum wage rate under the FLSA.

91.    Defendant's failure to pay the minimum wage to Plaintiffs and the Collective Members in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA. 29 U.S.C. § 255(a).

## IX.    CAUSE OF ACTION NO. 2: UNLAWFUL KICKBACKS UNDER THE FLSA

92.    The foregoing paragraphs are fully incorporated herein.

93.    The expenses that Defendant required Plaintiffs and Collective Members to pay for and the mandatory tip-outs that Defendant required from Plaintiffs and Collective Members constitute unlawful "kick-backs" to an employer under 29 U.S.C. § 203(m) of the FLSA.

94.    Section 203(m)(2) also provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

95.    The unlawful kickbacks Defendant received or required were obtained knowingly, willfully, intentionally, or in bad faith.

96.    Plaintiffs and Collective Members are entitled to an award of back pay for all unlawful kickbacks required by Defendant.

## X.    DAMAGES SOUGHT

97.    The foregoing paragraphs are fully incorporated herein.

98.    Plaintiffs and Collective Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked.

99.    Plaintiffs and Collective Members are entitled to reimbursement of all misappropriated tips plus an equal amount as liquidated damages.

100.    Plaintiffs and Collective Members are entitled to all their misappropriated funds, including repayment of all expenses Defendant required Plaintiffs and Collective Members to incur plus an equal amount as liquidated damages.

101.    Plaintiffs and Collective Members are entitled to an amount equal to all unpaid

wages due (including all their misappropriated tips and unlawful expenses incurred) as liquidated

damages because Defendant's actions were not based upon good faith. *See* 29 U.S.C. § 216(b).

102.    Plaintiffs and Collective Members are entitled to recover damages for the past three

(3) years because Defendant's violations were willful.

103.    Plaintiffs and Collective Members are entitled to recover their attorneys' fees and

costs as required by the FLSA. *See* 29 U.S.C. § 216(b).

## XI.    JURY DEMAND

104.    Plaintiffs hereby demand a jury trial.

## XII.    PRAYER FOR RELIEF

105.    For these reasons, Plaintiffs and Collective Members pray for judgment against

Defendant, awarding Plaintiffs and the Collective Members the following:

a.    For an order pursuant to § 216 of the FLSA finding Defendant liable for unpaid wages (including all misappropriated tips and all unlawful expenses incurred) due to Plaintiff (and those who join in the suit), and for liquidated damages equal in amount to the unpaid minimum wages (including all misappropriated tips and paid business expenses) due to Plaintiffs (and those who join in the suit);

b.    For an order awarding Plaintiffs (and those who join in the suit) an amount of pre-judgment interest, as may be appropriate, and post-judgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

c.    For an order awarding Plaintiffs (and those who join in the suit) all attorneys' fees incurred;

d.    For an order awarding Plaintiffs (and those who join in the suit) all costs and expenses incurred in pursuing this action; and

e.    For an order granting any such other and further relief as this Court deems just and appropriate.

\*    \*    \*

Respectfully submitted,


By: _/s/ Pamela G. Herrmann_
      Pamela G. Herrmann
      Texas Bar No. 24104030
      pamela@herrmannlaw.com
      Drew N. Herrmann
      Texas Bar No. 24086523
      drew@herrmannlaw.com

      **HERRMANN LAW, PLLC**
      801 Cherry St., Suite 2365
      Fort Worth, TX 76102
      Phone: 817-479-9229
      Fax: 817-840-5102
      ATTORNEYS FOR PLAINTIFF
      AND COLLECTIVE MEMBERS